IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD FRAZIER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 13-3742 |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Acting Commissioner of Social Security. | : | |
| | : | |

# REPORT AND RECOMMENDATION

**MARILYN HEFFLEY, U.S.M.J.**                                             **June 30, 2015**

Donald Frazier ("Frazier" or "Plaintiff"), pursuant to 42 U.S.C. § 405(g), seeks review of the Commissioner of Social Security's ("Commissioner" or "Defendant") decision denying his claim for Supplemental Security Income ("SSI"). For the reasons that follow, I recommend that Plaintiff's Request for Review be granted in part and that the matter be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Frazier was born on March 9, 1974. He completed high school through the 11th grade and worked in hardwood floor restoration, school maintenance, and the manufacturing of doors and door frames. R. at 137, 142.[1] Frazier alleges that he became unable to work on July 1, 2002 due to a gunshot wound to his right leg, depression, and post-traumatic stress disorder ("PTSD").

---

[1]    Citations to the administrative record will be indicated by "R." followed by the page number.

R. at 141; Pl.'s Br. (Doc. No. 13) at 1.

On June 22, 2010, Frazier protectively filed his application for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. ("Act"). R. at 14, 99-126. This application was denied initially on April 11, 2011. R. at 56-67. Frazier then filed a timely request for a hearing. R. at 68-70. On March 16, 2012, a hearing was held before an Administrative Law Judge ("ALJ"). R. at 26-50. By decision dated April 16, 2012, the ALJ found that Frazier was not disabled. R. at 11-25. Frazier filed a timely appeal with the Appeals Council, which affirmed the decision of the ALJ and denied his request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. R. at 1-5, 6-10. Frazier then commenced this action in federal court.

## II.     LEGAL STANDARD

The role of the court in reviewing an administrative decision denying benefits in a social security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987);

Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F. 3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

### III. **THE ALJ DECISION**

In her decision, the ALJ found that Frazier suffered from the following severe impairments: "[r]ight foot drop post gunshot wound with atrophy and chronic neuropathic pain; post-traumatic stress disorder (PTSD); substance dependence (in remission) and history of drug-

3

induced psychosis (recovered)." R. at 16. The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment. Id. The ALJ determined that Frazier had the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 CFR 416.967(a) with lifting/carrying up to 10 pounds; standing/walking for 2 hours out of an 8-hour workday, but with the option to elevate the right leg to stool height; with no ladders or crawling; no exposure to dangerous machinery, heights or chemicals; limited to simple, repetitive work with no assembly lines, no mandated teams, and as self-paced as possible such that the production or performance pace can vary, so long as all work is done by the end of the shift/day." R. at 18. Relying upon the testimony of the vocational expert ("VE") who appeared at the hearing, the ALJ concluded that Frazier could not return to his prior work, but that there were other jobs he was capable of performing, such as a bench assembler, automatic grinding machine operator, hand packager, sample inspector, and visual inspector. R. at 25. The ALJ found Frazier not disabled. Id.

## IV. **FRAZIER'S REQUEST FOR REVIEW**

In his Request for Review, Frazier argues that he should have been found disabled and contends that the ALJ erred in the following six ways: (1) the ALJ explicitly rejected medical opinion evidence from Frazier's treating psychiatrist; (2) the ALJ implicitly rejected medical opinion evidence from a state agency consultant; (3) the ALJ explicitly rejected medical opinion evidence from a consultative examiner; (4) the ALJ rejected diagnoses and GAF scores; (5) the ALJ rejected Frazier's testimony; and (6) the ALJ relied on VE testimony containing an unexplained inconsistency with the Dictionary of Occupational Titles. Pl.'s Br. at 2, 11, 14.

4

V.  **DISCUSSION**

   A. <u>**The ALJ's Analysis Concerning Plaintiff's Treating Psychiatrist**</u>

Frazier argues that the ALJ erred in explicitly rejecting the opinion of Dr. Jopindai Harika, M.D., Plaintiff's treating psychiatrist. Pl.'s Br. at 2-5. The Commissioner disagrees with Frazier's position, arguing that substantial evidence supports the ALJ's evaluation of the opinion. For the following reasons, I agree with Plaintiff and find that the ALJ's evaluation of Dr. Harika's opinion is flawed and warrants the remand of this matter for further analysis by the ALJ in accordance with the findings of this Report and Recommendation.

Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). Factors to be considered by the ALJ in assigning appropriate weight to a medical opinion include the following: the length of the treating relationship and frequency of examination; the nature and extent of the treating relationship; supportability; consistency; specialization; and other relevant factors. 20 C.F.R. § 416.927(c)(1)-(6).

In rejecting a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (quotations omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Horst v. Comm'r of Soc. Sec., 551 F. App'x 41, 45 (3d Cir. 2014) (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)). Furthermore, the ALJ must explain on the record his or her reasons for disregarding a treating physician's opinion. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). It cannot be for "no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted). However, an ALJ is required to conduct an independent analysis of the relevant evidence. 20 C.F.R. §§ 404.1545, 416.945. As the United States Court of Appeals for the Third Circuit has articulated:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). State agent opinions merit significant consideration as well. See SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). [2]

---

[2] Mental ailments are to be demonstrated by medical evidence, which consists of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1508, 416.908. In addressing the severity of a mental impairment, the regulations instruct the Commissioner to "consider all relevant and available clinical signs and laboratory findings." §§ 404.1520a(c)(1), 416.920a(c)(1).

(Continued on next page)

Here, the ALJ offered the following reasoning concerning Dr. Harika's opinion:

> As for the opinion evidence, in November 2010, the claimant's treating psychiatrist prepared a Medical Source Statement regarding his mental health limitations (Exhibit 4F). This psychiatrist opined that the claimant had marked to extreme limitations in understanding, remembering and carrying out instructions, making judgments on simple decisions, social functioning and with responding to work pressure/changes (Exhibit 4F). However, the evaluators were also under the mistaken impression that the claimant never abused drugs and thus found no correlation possible between drug and alcohol abuse and the claimant's mental health limitations (Exhibit 4F). As the claimant misled this psychiatrist regarding his history of drug abuse, it is entirely plausible that he misled this psychiatrist regarding his experience of symptoms and limitations. Moreover, this opinion is inconsistent with the claimant's contemporaneous mental health treatment notes, which frequently noted that he was doing well and had essentially normal functioning, and with the claimant's own self-report of his daily activities. As such, the undersigned assigns little weight to this opinion.

R. at 21-22.

In affording the opinion of Frazier's treating psychiatrist little weight, the ALJ primarily focuses on Frazier's reporting of his past drug use. The ALJ asserts that "[a]s the claimant misled this psychiatrist regarding his history of drug abuse, it is entirely plausible that he misled this psychiatrist regarding his experience of symptoms and limitations." R. at 22. I, however, find that this assertion is speculative and not supported by substantial evidence.

The ALJ is not required to adopt Dr. Harika's opinion concerning Frazier's restrictions for work-related mental activities.[3] However, in choosing to discount the treating physician's

---

"Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. §§ 404.1528(b), 416.928(b). Furthermore, in order to be controlling, the opinions of treating physicians must be supported by the medical evidence of the record, which includes treatment notes. See Plummer, 186 F.3d at 430 (Third Circuit accorded limited weight to a treating physician's answers to interrogatories when the answers conflicted with prior notes).

[3] The ultimate disability and RFC determinations regarding whether a claimant is able to work is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).

7

assessment, an ALJ may not make "speculative inferences from medical reports," and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317. Here, the ALJ speculates that Frazier misled Dr. Harika about his history of drug abuse, but the record does not support this contention.

Although the medical records in this case indicate that Frazier used PCP and THC in 2008, R. at 20, there is nothing in the record to suggest that Frazier was using alcohol or drugs in 2010 or purposefully misled Dr. Harika. For instance, in the psychiatric assessment completed on November 18, 2010, Dr. Harika notes that Frazier denied using alcohol or street drugs. R. at 291. This is not misleading as there is no indication in the record that Frazier was using alcohol or drugs at that time. While Dr. Harika mistakenly indicated in his Medical Source Statement that Frazier never used drugs or alcohol, R. at 222, there is no evidence in the record to substantiate the ALJ's conclusion that Frazier affirmatively misled his doctor.

The ALJ also contends that Dr. Harika's opinion "is inconsistent with the claimant's contemporaneous mental health treatment notes, which frequently noted that he was doing well and had essentially normal functioning, and with the claimant's own self-report of his daily activities." R. at 22. However, the ALJ offers no support for these conclusions when discussing the treating psychiatrist's opinion. As the Third Circuit explained in Morales, "the work environment is completely different from home or a mental health clinic" and a doctor's observations that a patient is "stable" during treatment does not support the medical conclusion that the claimant can return to work. Morales, 225 F.3d at 319. The ALJ should do more to develop these points on remand if she intends to rely on them.

In conclusion, while I express no opinion as to the weight to be afforded to Dr. Harika, I find that the ALJ's significant reliance on speculative impressions to discount Dr. Harika's

opinion concerning Frazier's mental impairments was improper. Consequently, the ALJ's analysis concerning Frazier's treating psychiatrist was not supported by substantial evidence and warrants remanding this matter for further proceedings.

### B. The ALJ's Analysis Concerning the State Agency Examiner

Next, Frazier argues that the ALJ erred by rejecting without explanation certain limitations imposed by the state agency examiner, Dr. Minda Bermudez, M.D., despite affording her medical opinion "great weight." Pl.'s Br. at 67-69. The ALJ offered the following discussion of Dr. Bermudez's opinion:

> In March 2011, Minda Bermudez, M.D., a State agency consultant, prepared a Physical Residual Functional Capacity Assessment; she noted diagnoses of right footdrop status post gunshot wound, right lower extremity atrophy and chronic neuropathic pain secondary to gunshot wound (Exhibit 10F). She opined the claimant could lift/carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours out of an 8-hour workday; sit for about 6 hours in an 8-hour workday and should avoid right foot controls and repetitive motion with the right foot (Exhibit 10F). Dr. Bermudez further opined the claimant should never climb ladders, ropes or scaffolds, but could occasionally climb ramps/stairs, balance, kneel, crouch and crawl (Exhibit 10F). She found the claimant could frequently stoop (Exhibit 10F). Finally, Dr. Bermudez restricted the claimant from concentrated exposure to temperature extremes; wetness; vibration; fumes, odors, dusts, gases, poor ventilation and hazards (Exhibit 10F). The undersigned assigns great weight to Dr. Bermudez's opinion, as she had an opportunity to review the claimant's medical records and since her opinion is consistent with the objective medical evidence; however, as noted below, giving the claimant the benefit of the doubt, the undersigned has set forth limitations that are more restrictive than those found by Dr. Bermudez.

R. at 22. Frazier argues that the ALJ failed to include postural and environmental limitations imposed by Dr. Bermudez. His point is well taken.

Despite affording Dr. Bermudez's opinion "great weight" and claiming to set forth more restrictive limitations, the ALJ failed to include certain limitations assessed by Dr. Bermudez. Consequently, it is unclear what parts of Dr. Bermudez's report the ALJ accepted or rejected. This lack of analysis and explanation is problematic. First, if the ALJ rejected some of the

9

opinions of Dr. Bermudez, her reasons for doing so are not apparent. Furthermore, if the ALJ accepted the opinions of Dr. Bermudez, then she failed to include them all in the RFC and the hypothetical she posed to the VE.

With respect to RFC assessments and hypotheticals posed to vocational experts, ALJs are not required to include every alleged impairment; they must "accurately convey" only *"credibly established limitations"* which "are medically supported and otherwise uncontroverted in the record." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2003). An RFC assessment is not a medical assessment, but an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2006); SSR 96–5p, 1996 WL 374183 (July 2, 1996). An ALJ is required to conduct an independent analysis of the relevant evidence and develop an appropriate RFC based upon the record. 20 C.F.R. §§ 404.1545, 416.945. As the Third Circuit has articulated:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well. *See* SSR 96–6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs, ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).

However, an ALJ must explain the weight given to physician and psychologist opinions. See 20 C.F.R. § 404.1527(e)(2)(ii). The ALJ's RFC assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981); Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). The ALJ must give

some indication of the evidence which he rejects and the reason for discounting it. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); see also SSR 96–8p, 1996 WL 374184 (July 2, 1996). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Cotter, 642 F.2d at 705.

Here, if the ALJ rejected parts of Dr. Bermudez's report, she did so without explanation.[4] As noted above, the opinions of state agency medical and psychological consultants and other program physicians and psychologists merit significant consideration. See SSR 96–6p, 1996 WL 374180, at *2-3 (July 2, 1996). It cannot be discerned from the ALJ's opinion whether the rejections here were made for a permissible reason, impermissible reason, or simply in error. While Defendant is correct that an ALJ can accept only part of a consultative examiner's opinion in determining an RFC, in this case, the ALJ failed to explain what she adopted, what she rejected, and her reasons for doing so. This lack of explanation warrants correction on remand.

### C. The ALJ's Analysis Concerning the State Agency Consultant

Next, Frazier claims that the ALJ erred in her assessment of the state agency consultant's, Dr. Harris A. Ross, D.O., opinion concerning Frazier's physical abilities. Pl.'s Br. at 6. Frazier takes issue with limitations imposed by Dr. Ross that were not included by the ALJ in the RFC. The Commissioner argues that the ALJ's analysis of Dr. Ross's opinion is supported by substantial evidence. For the following reasons, while I agree that portions of the ALJ's

---

[4] While the Commissioner argues that any failure by the ALJ to include these limitations was harmless, a hypothetical posed by the ALJ to a VE must accurately convey the claimant's physical and mental impairments. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). The ALJ must include all of a claimant's impairments in the hypothetical. Id.; Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). If the hypothetical does not accurately convey the claimant's limitations, then the VE's answer cannot be considered substantial evidence. Ramirez, 372 F.3d at 552.

assessment concerning certain physical limitations are supported, other limitations were not addressed and should be dealt with by the ALJ on remand.

In affording Dr. Ross's medical opinion little weight, the ALJ offered the following analysis to support her finding:

> In February 2011, Harris Ross, D.O., a consultative examiner, conducted an examination of the claimant; at this time, the claimant's medications included Risperdal, Elavil and Cymbalta (Exhibit 6F). The claimant denied any alcohol or drug use and acted mentally appropriate without overt signs of depression, fatigue or anxiety (Exhibit 6F). He had a mildly antalgic gait and was weak in the right leg, with an absent Achilles reflex; however, his upper and lower extremities were otherwise normal (Exhibit 6F). Tenderness was noted in the entire right lower extremity and he had mild to moderate atrophy of the right lower extremity from the knee down (Exhibit 6F). The power of his right lower extremity was a 4/5 in flexor and extensor groups, though his left lower extremity was normal (Exhibit 6F). His ankle range of motion was markedly limited (Exhibit 6F). Dr. Ross reported impressions of footdrop on the right, atrophy of the musculature of the right lower extremity, history of gunshot wound to the right lower extremity, depression as per history and chronic pain the right lower extremity (Exhibit 6F). Due to his impairments, Dr. Ross opined the claimant could lift/carry up to 20 pounds occasionally; stand/walk 1 hour or less in an 8-hour workday; had no sitting, pushing or pulling limitations; could occasionally bend and kneel but should never stoop, crouch, balance or climb and should avoid heights, temperature extremes, wetness, fumes/odors/gases and humidity (Exhibit 6F). The undersigned finds that the above stooping and standing/walking restrictions are inconsistent with the claimant's daily activities and thus are not accepted; specifically, he admitted he mowed the lawn, performed household repairs, prepared meals and enjoyed playing sports, which is inconsistent with these stooping, standing and walking restrictions. The undersigned thus assigns partial weight to Dr. Ross' opinion; while the undersigned accepts his opinion to the extent it is consistent with the above residual functional capacity assessment, the undersigned finds Dr. Ross' more restrictive limitations to be inconsistent with the objective evidence and with the claimant's daily activities and thus assigns said portions of his opinion little weight.

R. at 22-23.

Frazier believes that the ALJ incorrectly "found Plaintiff to have greater ability for standing/walking than did Dr. Ross. She found no limitation of bending, kneeling, stooping, crouching or balancing. She found no limitation with respect to temperature extremes, wetness

or humidity." Pl.'s Br. at 6-7. Frazier asserts that the ALJ substituted his own lay medical judgment for that of Dr. Ross by finding the doctor's opinion to be inconsistent with objective medical evidence. Frazier also contends that "nothing in Mr. Frazier's limited [daily] activities is inconsistent with the limitations that Dr. Ross reported." Pl.'s Br. at 7.

Concerning the ALJ's conclusion regarding Dr. Ross's stooping, standing, and walking restrictions, I find that the ALJ's determination is supported by substantial evidence. As the ALJ explained, Frazier's activities included mowing the lawn, performing household chores, preparing meals and playing sports, which the ALJ found to be inconsistent with these restrictions. See R. at 23, 163-65. After considering the information, this Court finds that substantial evidence exists in the record to support the ALJ's finding that Dr. Ross's opinion as to Frazier's stooping, standing, and walking restrictions is inconsistent with the activities he identified in his Adult Function Report. See R. at 161-70; Truett v. Barnhart, No. 04-CV-5376, 2005 WL 3216741, at *2-3 (E.D. Pa. Nov. 23, 2005) (finding that substantial evidence existed in the record to support the ALJ's finding that functional restrictions imposed by the plaintiff's treating physician were inconsistent with the plaintiff's daily activities).

The ALJ, however, failed to address Dr. Ross's restrictions concerning temperature extremes, wetness and humidity. Social Security Ruling 96-8p, 1996 WL 374184, at *7 (July 2, 1996), provides, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." As the decision stands, there is no indication whether the ALJ disregarded these restrictions because

13

they were not credible or whether the ALJ ignored or overlooked them. For this reason, the ALJ should explicitly discuss these restrictions on remand.

### D. **The ALJ's Analysis Concerning Plaintiff's Diagnoses and GAF Score**

Next, Frazier takes issue with the ALJ rejecting medical diagnoses and a GAF score of 40 assigned by his treating psychiatrist. Pl.'s Br. at 9-11. Frazier argues that the ALJ is not qualified to supplant his medical judgment for the diagnosis of a treating physician. Frazier also argues that the ALJ improperly relied on brief clinical notations. Because I am recommending remand for other reasons, I find it appropriate for the ALJ to reconsider her analysis of Frazier's diagnoses by his treating psychiatrist.

The ALJ, in discussing the diagnoses and GAF score assigned by Dr. Harika, noted that despite normal findings, Frazier "was diagnosed with a litany of disorders, including PTSD, major depressive disorder with psychotic features, generalized anxiety disorder, attention deficit hyperactivity disorder and personality disorder, and assigned a GAF score of 40 . . . ." R. at 21.[5] The ALJ found as follows:

> The undersigned finds that these diagnoses are not accurate characterizations of the claimant's mental health impairments at this time, as the claimant's statement that he heard voices is insufficient to diagnose the claimant with major depressive

---

[5] A GAF score is a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning." Rivera v. Astrue, No. 12-6622, 2014 WL 1281136, at *7 (E.D. Pa. Mar. 27, 2014) (quoting American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) (hereinafter DSM-IV-TR)). The Commissioner is correct that the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders, published in 2013, no longer includes GAF scores. Def.'s Br. at 10. In addition, the Social Security Administration released internal guidance, AM-13066, effective July 22, 2013, which permits ALJs to use "GAF ratings as opinion evidence when assessing disability claims involving mental disorders, but that a 'GAF score is never dispositive of impairment severity,' and thus an ALJ should not 'give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." Ladd v. Astrue, No. 12-4553, 2014 WL 2011638, at *1 n.2 (E.D. Pa. May 16, 2014) (AM-13066 at 5).

disorder with psychotic features; this diagnosis instead appears to rely quite heavily on the claimant's prior diagnoses stemming from hospitalizations related to his PCP usage.

R. at 21.

This conclusion by the ALJ is simply too speculative and appears to be tainted with the ALJ's own medical judgment. First, the ALJ states that these diagnoses are not supported by Frazier's claim that he heard voices. R. at 21. However, the ALJ fails to correctly summarize and oversimplifies Dr. Harika's psychiatric assessment of Frazier. Dr. Harika did not only discuss Frazier's claim that he heard voices. Rather, Dr. Harika, in coming to his diagnoses, noted as follows:

> [Frazier] has auditory hallucinations, a voice telling her [sic] to harm herself [sic]. He has visual hallucinations. He becomes paranoid. He has flashbacks and nightmares from being shot and his friend being killed. He has depression and anxiety, hallucinations. He has difficulty concentrating, loses things, distracted by external stimuli, forgetful in daily activities, does not seem to listen unless spoken to directly.

R. at 291. In addition, the ALJ's assertion that these diagnoses rely "quite heavily on the claimant's prior diagnoses stemming from hospitalizations related to his PCP usage" is nothing more than speculation and not supported by substantial evidence. The psychiatric assessment prepared by Dr. Harika does not appear to rely on Frazier's prior hospitalizations. For these reasons, the ALJ's assessment of the diagnoses and GAF score is not supported by substantial evidence, and these errors should be corrected on remand.

### E. The ALJ'S Analysis Concerning Plaintiff's Credibility

Frazier also alleges that the ALJ erred in her credibility assessment of Frazier's subjective complaints. Pl.'s Br. at 11-14. Frazier takes issue with the ALJ invoking his earnings record, daily activities, and alleged lack of candor concerning his history of drug abuse as reasons for finding him not credible. Id. at 12. For the following reasons, which are becoming a

consistent theme in this Report and Recommendation, I find that the ALJ's treatment of Frazier's prior drug use is not supported by substantial evidence and should be corrected on remand.

As part of an RFC analysis, the ALJ must determine the credibility of the claimant's subjective complaints by evaluating the intensity and persistence of the symptoms to determine the extent to which those symptoms limit the individual's ability to work. 20 C.F.R. § 404.1529(c). "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft, 181 F.3d at 362. In reaching a determination, the ALJ must consider "objective medical evidence, the individuals own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996).[6]

Furthermore, Social Security Ruling 96-7p explains that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that . . . 'the allegations are (or are not) credible.'" Id. at *2. Rather, the ALJ's opinion must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

---

[6] In addition to objective medical evidence, the following seven factors are to be considered in assessing the claimant's credibility: (1) the "individual's daily activities;" (2) the "location, duration, frequency, and intensity of the individual's pain or other symptoms;" (3) "[f]actors that precipitate and aggravate the symptoms;" (4) the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;" (5) "[t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms;" (6) "[a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms;" and (7) "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *3.

individual's statement and the reasons for that weight." Id.

In consideration of these factors and the ALJ's opinion, I find that the ALJ's discussion of Frazier's drug use is not supported by the record. The ALJ, in assessing Frazier's credibility, concludes that Frazier "was not candid regarding his drug history and, in fact, failed to mention it at all during the hearing despite evidence of drug dependence in the record; he also failed to mention this history of drug abuse to some examiners and treating physicians." R. at 19. This is incorrect.

During the administrative hearing, the ALJ never asked Frazier about his prior drug use. Frazier's attorney, however, questioned Frazier on this very topic. His attorney asked, "[t]he record indicates you received treatment for drug related problems in 2008, about four years ago. Have you used drugs since then?" R. at 42. Frazier replied, "[n]uh-huh. That was just because – like I said, I was just started therapy and everything started coming up in my – you know, things built up. And that's all it was. It was just a little release and after that everything was good." R. at 42-43.

Throughout her opinion, the ALJ appears to be unreasonably focused upon Frazier's prior drug use from 2008 in an attempt to show that Frazier purposefully misled her and his doctors. However, the record simply does not demonstrate that Frazier misled anyone about his prior drug use. The ALJ's incorrect finding that Frazier did not mention his prior drug use during the administrative hearing when his attorney specifically questioned him about it calls into question the ALJ's credibility assessment and supports my recommendation to remand this matter for further proceedings. On remand, the ALJ should correct her credibility analysis consistent with the findings of this Report and Recommendation.

### F. The RFC and Hypothetical to the Vocational Expert

Frazier argues that the ALJ and VE erred at step five of the sequential evaluation process. Pl.'s Br. at 14-16. Because I recommend that this matter be remanded for other reasons concerning the ALJ's opinion, it is premature to address Frazier's arguments concerning the hypothetical posed to the VE and the VE's response. Only after the ALJ has conducted a thorough analysis in formulating the RFC can she pose an appropriate hypothetical question to the VE.

## VI. RECOMMENDED RELIEF

Frazier argues that given the errors committed by the ALJ, and in consideration of the medical and other evidence in the record, he should be found disabled and entitled to benefits. While I agree that the ALJ erred, it is not clear whether a finding of disability would be supported by substantial evidence in the record. Instead, I believe further administrative proceedings are necessary to properly make that determination. Accordingly, I recommend that this case be remanded to the ALJ for further review consistent with the findings in this Report and Recommendation.

## VII. CONCLUSION

For the foregoing reasons, I make the following:

**RECOMMENDATION**

AND NOW, this 30th day of June, 2015, IT IS RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be granted in part, and the matter be remanded to the Commissioner for further review consistent with this Report and Recommendation. The Commissioner may file objections to this Report and Recommendation within 14 days after receiving a copy thereof. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE